**COMMONWEALTH OF
PENNSYLVANIA**
**Appellee**

v.

**Michael BRICE Appellant.**

Superior Court of Pennsylvania.

Argued May 5, 2004.
Filed July 26, 2004.

Michael J. Malloy, Media, for appellant.

Michelle P. Hutton, Assistant District Attorney, Media, for Commonwealth appellee.

Before: STEVENS, BENDER and MONTEMURO *, JJ.

OPINION BY MONTEMURO, J.:

¶ 1 This is an appeal from the judgment of sentence entered May 15, 2003, in the Delaware County Court of Common Pleas, following Appellant's bench conviction of, *inter alia*, two counts of possession with intent to deliver cocaine. We affirm.

¶ 2 On the evening of August 15, 2001, Officer Marlowe Freeman of the Chester County Police Department was conducting surveillance on the corner of Third and Jeffrey Streets in the city of Chester. At the time of the incident, Officer Freeman was a 12 year veteran officer, who had worked in the narcotics unit for three years.[1] He testified that the corner under surveillance was known as a high drug crime area, and that his narcotics unit had participated in over 30 arrests at that location.

¶ 3 At approximately 10:10 p.m., Officer Freeman observed a female approach a male, later identified as Appellant's co-conspirator Antwon Berry, and converse briefly with him. Berry then turned and shouted something to Appellant, who was sitting in front of 2107 West Third Street. The two men then walked towards each other, spoke briefly, and proceeded north on Jeffrey Street to a parked silver Ford Taurus. Appellant opened the driver's side door and sat sideways in the driver's seat, while Berry remained outside the car, standing in the frame of the open door. Officer Freeman observed Appellant reach in the center console and remove a clear plastic sandwich bag containing numerous white items. Based on his training and experience, Officer Freeman determined that the bag contained packaged cocaine. Appellant then reached in the bag, grabbed several of the small white items and gave one or more to Berry. Berry waved to the female, and the two met somewhere between the corner and the car. Berry handed the female one of the items, and, after briefly inspecting it, she handed Berry paper currency. When the female held up the item for examination, Officer Freeman could see that it was a small plastic bag containing a white substance. Based on his training and experience, Officer Freeman determined that the

* Retired Justice assigned to Superior Court.

1. After Officer Freeman described the experience and training he received in the area of drug investigations, the trial court accepted him as an expert in the field. (N.T. Suppression Hearing, 1/23/03, at 13).

bag contained cocaine, and that he had just witnessed a drug transaction.

¶ 4 When the female entered a waiting van and began to drive away, Officer Freeman instructed his back-up team to stop the van and detain the female passenger. During the transaction, Officer Freeman had given the back-up officers "a play by play" of the events. (N.T. Suppression Hearing, 1/23/03, at 28). While the back-up team pursued the van, Officer Freeman maintained surveillance on Berry, who entered the residence at 2107 West Third Street, and on Appellant, who, after replacing the sandwich bag in the center console of the silver Taurus, began walking west on Third Street away from the area. Officer Freeman instructed the back-up unit to disregard the van and stop Appellant, as the officer feared Appellant would leave the area, and he believed Appellant had more drugs in the car.

¶ 5 Officer Otis Blair testified that he and Officer R. Wately[2] were the back-up team for Officer Freeman on the night in question. Officer Blair testified that prior to their stop of Appellant, Officer Freeman had relayed very specific details of events as they transpired, as well as complete descriptions of the individuals involved. The officers observed Appellant sitting on the steps of a private residence with which the officers knew he had no connection. Officers Blair and Wately approached Appellant, identified themselves as police officers, and informed him that they were conducting a drug investigation. They then asked him if he owned the silver Taurus. When Appellant refused to respond, the officers asked him to accompany them to the car, to which he agreed. Upon reaching the vehicle, Officer Blair observed, in plain view in the armrest of the driver's door, a white glassine bag containing a white, powdery substance. Based on his training and experience, Officer Blair believed that the bag contained about a quarter ounce of cocaine.[3] Appellant was then placed under arrest.

¶ 6 The officers asked Appellant for his consent to search the vehicle, but he refused. Thereafter, the officers secured the vehicle and applied for a search warrant, which was signed and executed the following day. The search uncovered, *inter alia*, numerous packages of cocaine and new plastic bags. A search of the vehicle's tags revealed that the car was registered to Appellant, but that the registration was suspended because the insurance had been cancelled.

¶ 7 Appellant was initially charged with possession of cocaine, possession with intent to deliver cocaine, possession of drug paraphernalia, and three counts of conspiracy following his arrest on August 15th. After the search warrant was executed, Appellant was charged with the same crimes based on the drugs and paraphernalia recovered in the vehicle search. Appellant filed an omnibus pretrial motion, including a motion to suppress challenging both the initial stop and the subsequent search of his vehicle. Following a two day suppression hearing, his motion was denied.

¶ 8 On April 15, 2003, Appellant waived his right to a jury trial and proceeded to a bench trial based on the evidence present-

2.  This officer's name appears as "Whately" in the trial court Opinion, and "Watley" in the transcript. We have used the spelling as it appears in the Affidavit of Probable Cause.

3.  Officer Blair's experience included 13 years as a police officer, and over 60 purchases of cocaine while working undercover. After a colloquy detailing his background and training, the trial court accepted Officer Blair as an expert in the field of drugs and drug investigations. (N.T. Suppression Hearing, 1/24/03, at 11).

ed at the suppression hearing. The trial judge returned a verdict of guilty on all charges. On May 15th, Appellant was sentenced to two concurrent terms of 2 to 4 years' imprisonment for the possession with intent to deliver convictions, two concurrent terms of 6 to 23 months' imprisonment for the conspiracy/delivery convictions, and two concurrent terms of 12 months' probation for the possession of paraphernalia convictions, the probation to run consecutive to the prison term;[4] thus, Appellant's aggregate sentence was 2 to 4 years' imprisonment followed by one year probation. The two two-year prison terms were mandatory minimum sentences imposed pursuant to 18 Pa.C.S.A. § 6317, Drug-free school zones. Appellant filed a timely post sentence motion, which was denied by the trial court by Order dated September 23, 2003. This appeal follows.

¶ 9 Appellant raises two issues on appeal. First, he challenges the trial court's denial of his suppression motion. Second, he challenges the court's imposition of the mandatory minimum provision at sentencing. For the reasons set forth below, we affirm.

¶ 10 Our standard of review when considering the denial of a pretrial motion to suppress is well settled:

Our ... review ... is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions are in error.

*Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 842 (2003). Moreover, we must defer to the credibility determinations of the trial judge who had the opportunity to observe the witnesses' testimony. *Id.* at 843.

¶ 11 Appellant argues that although the officers had reasonable suspicion to stop and detain him initially, the detention escalated into the functional equivalent of an arrest without sufficient probable cause when the officers escorted Appellant back to the silver Taurus. Appellant contends that once the officers' questions to him revealed nothing to suggest that he was selling narcotics, he should have been free to leave. Rather, he was "detained, possibly handcuffed and finally transported to the scene of the vehicle in question after the intial investigation had concluded." (Appellant's Brief at 15). Accordingly, Appellant contends, all of the narcotics seized should have been suppressed as "fruits of the poisonous tree." (*Id.* at 17).

¶ 12 The trial court concluded, however, that probable cause to arrest Appellant existed after Officer Freeman witnessed Appellant's participation in a drug transaction. We agree. This Court's recent *en banc* decision in *Commonwealth v. Dunlap*, 846 A.2d 674 (Pa.Super.2004), is particularly instructive. In *Dunlap*, an officer and his partner were working plainclothes surveillance on a high drug crime corner in Philadelphia. The officer observed the appellant approach a man, engage in a brief conversation, and exchange money in return for "'small objects.'" *Id.* at 675. After the appellant left the scene, the officers radioed a third officer who stopped the appellant and recovered three packets of crack cocaine from his person.

4. All of the other convictions merged for sentencing purposes.

¶ 13 In finding that the officers had probable cause to stop and arrest the appellant, the *Dunlap* Court found several facts significant: (1) the transaction was witnessed by an experienced police officer who had been on the drug strike force for nine months; (2) the officer, himself, had participated in 15 to 20 arrests in that particular area; (3) the officer concluded, based on his training and experience, that he had witnessed a drug transaction; and (4) the transaction took place on a corner well known for a high incidence of drug crimes. *See Id.* at 675–77. Here, an even stronger argument in favor of probable cause exists. Officer Freeman testified that he had worked in the narcotics unit for three years, and participated in over 30 drug arrests at the same location, which was known as a high drug trafficking area. Moreover, unlike in *Dunlap*, Officer Freeman clearly identified the plastic bag Appellant removed from the car as containing packets of cocaine; there was no question that he witnessed an exchange of cocaine for money. Thus, because we agree with the trial court that the officers possessed probable cause to arrest Appellant when he was first stopped, whether or not he was placed in "custody" when he was transported back to the vehicle is irrelevant. Accordingly, Appellant's first issue fails.

■ ¶ 14 Next, Appellant contends that the trial court erred in sentencing him to a mandatory minimum two years' imprisonment pursuant to 18 Pa.C.S.A. § 6317.[5] The statute provides, in pertinent part:

§ 6317. Drug-free school zones

(a) General rule.—A person 18 years of age or older who is convicted in any court of this Commonwealth of a viola-

tion of section 13(a)(14) or (30) of ... The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement ...

(b) Proof at sentencing.—The provision of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine by a preponderance of the evidence if this section is applicable.

18 Pa.C.S.A. § 6317(a)-(b) (emphasis added).

¶ 15 At sentencing, the Commonwealth argued that § 6317 was applicable to Appellant's possession with intent to deliver convictions because the transaction took place within 162.5 feet of a playground, or more specifically, a basketball court. The parties stipulated that, if called, Officer Freeman would have testified that, at the time of the incident, the basketball court was used frequently by neighborhood resi-

---

5. We note that a challenge to the application of a mandatory sentencing provision implicates the legality of a sentence. *Common-* *wealth v. Drummond*, 775 A.2d 849, 855 (Pa.Super.2001).

dents, both children and adults, for recreational purposes. (N.T. Sentencing, 5/15/03, at 5–6). In addition, the Commonwealth entered into evidence a picture of the basketball court.

¶ 16 Although he stipulated to this testimony at sentencing, Appellant now challenges the court's finding that the area in question is a "playground" for purposes of § 6317. Specifically, he argues that the photograph admitted by the Commonwealth "depicts no more than a 'basketball set' nailed to a pole in a vacant lot.... To permit such a structure to meet the definition of playground would turn every street where a milk carton is attached to a telephone pole into a 'playground.'" (Appellant's Brief at 20). The trial court, however, concluded that the area qualified as a "playground" as contemplated by the statute. We agree.

¶ 17 The term "playground" is not defined in the statute. In *Commonwealth v. Campbell*, 758 A.2d 1231 (Pa.Super.2000), we considered whether the sentencing enhancement applied to playgrounds not associated with school property or municipal facilities. In that case, the play areas at issue were located within a privately owned HUD subsidized housing apartment complex, *id.* at 1233, and included swing sets, a basketball court, picnic tables, sliding boards, and a metal climbing apparatus. *Id.* at 1235. We found that:

> [t]he term "playground" has ... been defined as "a piece of land used for and usu[ally] equipped with facilities for recreation esp[ecially] by children." Webster's New Collegiate Dictionary 874 (8th ed.1981). Playground has also been defined as "[a]n outdoor area set aside for recreation and play; especially, one containing seesaws, swings, and the like." The American Heritage Dictionary of the English Language 1005 (7th Ed.1978).

*Id.* at 1235. We concluded that the statute was not limited to school or municipal play areas, but rather, "protects our children in the places where they routinely play." *Id.* at 1237.

¶ 18 The area at issue here, although not well-equipped, is certainly an area where children in the neighborhood "routinely play." As the Commonwealth explains in its brief,

> [T]his area was a known high crime, high drug area. One of the few outlets for children in these types of neighborhoods is basketball. The Commonwealth presented evidence that the neighborhood children and adults consistently used the court. It cannot be suggested that the Legislature intended only to protect children playing in well-preserved playground areas and courts with fiberglass boards and freshly painted lines.

(Commonwealth's Brief at 18). We agree. Accordingly, we find that the trial court did not err in determining, by a preponderance of the evidence, that the sentencing enhancement was applicable.

¶ 19 Judgment of sentence affirmed.

¶ 20 BENDER, J. files a Concurring Opinion.

BENDER, J., Concurring:

¶ 1 While I concur with the Majority in affirming Appellant's judgment of sentence, I write separately to respectfully express my concern over the liberal interpretation of what constitutes a "playground" under the statutory language of 18 Pa.C.S. § 6317. Given the serious consequences of the imposition of a mandatory minimum increase in sentencing, this determination should not be made without careful consideration of the actual circumstances of the case as well as the children the statute was enacted to protect. In

order to ensure fair and equal application of the law, it is necessary to find limitations for such broad definitions and adequate evidentiary support to sustain greater terms of imprisonment.

¶ 2 This concern for the inappropriate imposition of enhanced sentencing was shared by this Court in *Commonwealth v. Campbell,* 758 A.2d 1231 (Pa.Super.2000). The only case to date, which has addressed the issue of interpreting the statute before us, *Campbell* discusses the need for narrow definitions in analyzing statutory criminal penalties, stating "[p]enal statutes must be strictly construed." *Id.* at 1236 (citing *Commonwealth v. Runion,* 427 Pa.Super. 217, 628 A.2d 904, 905–906 (1993)).

¶ 3 In defining the term "playground," the majority cites *Campbell* for the proposition that the statute in question "protects our children in the places where they routinely play." *Id.* 1237. While the legislative intent that fostered this statute was surely meant to create a safe habitat void of illegal drug sales, the statutory language must be given a specific context for its application. The mere presence of children alone cannot give rise to a "playground" absent some additional indications of a designated facility for their recreational use.

¶ 4 In *Campbell,* the area described was unquestionably a playground designed for use by the children of a privately-owned apartment complex. *Id.* at 1233. Containing swing sets, a basketball court, picnic tables, sliding boards, and a metal climbing apparatus, there is little doubt that

this area would be considered a playground by the general definitions of the word.[6] *Id.* at 1235.

¶ 5 In the present case, there is some evidence in the record indicating that the area in question was used as a playground. Both parties agreed to the stipulated testimony of Officer Freeman that the basketball court was a place used by children and adults alike. There was no evidence submitted by Appellant which would suggest that these statements were inaccurate. The picture of the area submitted into evidence depicted an empty paved rectangular lot in the shape of a basketball court with a pole and hoop at either end. The paved lot is surrounded by grass and located in the middle of a residential neighborhood.

¶ 6 Given these specifications and no contrary indications to its use, the trial court and this Court have concluded that this area is a playground under the statute. While I do not necessarily disagree with this conclusion, I am concerned about the broad interpretation of the statutory language. Appellant argues in his brief "[t]o permit such a structure to meet the definition of playground would turn every street where a milk carton is attached to a telephone pole into a 'playground.'" Appellant's Brief at 20. This concern must be met by sufficient development of the record to ensure that the Commonwealth cannot use this statute to impose additional sentencing where there is no real concern for children nor evidence of a playground. In the present case, additional

---

6. As cited in the majority opinion, *Campbell* used the following dictionary definitions to characterize the term "playground."
The term "playground has...been defined as "a piece of land used for and usu[ally] equipped with facilities for recreation esp[ecially] by children." Webster's New Collegiate Dictionary 874 (8th ed.1981).

Playground has also been defined as "[a]n outdoor area set aside for recreation and play; especially, one containing seesaws, swings, and the like." The American Heritage Dictionary of the English Language 1005 (7th Ed.1978).
*Id.* at 1235.

testimony by residents of the neighborhood and photographs taken while children are present in the space would help to strengthen the Commonwealth's argument and ensure that Appellant did in fact act "within 250 feet of the real property on which is located a recreation center or playground...." 18 Pa.C.S. § 6317(a).

¶ 7 Enhancement of sentence should only be upheld where there is clear and convincing evidence on the record indicating the presence of a playground. While extending this definition to include a basketball court may be appropriate in the instant case, we must be cautious in our interpretation of statutory language and ensure that the record supports the intent of the statute.[7]

¶ 8 Accordingly, I concur in the result reached by the Majority.

---

**7.** While not raised in the instant case, it would seem that a jury would be required to make this determination in future cases using the beyond reasonable doubt standard. *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).