**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JERMALL E. JOHNSON, | |
| Appellant | No. 1348 WDA 2015 |

Appeal from the Judgment of Sentence August 25, 2015
in the Court of Common Pleas of Erie County
Criminal Division at No.: CP-25-CR-0002739-2014

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 21, 2016**

Appellant, Jermall E. Johnson, appeals *pro se*[1] from the judgment of sentence imposed following his bench trial conviction of three violations of the Uniform Firearms Act (VUFA), possession of a small amount of marijuana and possession of drug paraphernalia.  The issues Appellant raises lack merit.  Accordingly, we affirm.

We derive the facts of the underlying case from the trial court opinion and our independent review of the record.  (**See** Trial Ct. Op., at 1-3; **see also** N.T. Trial, 7/13/15).

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant waived his right to counsel.  (**See** Trial Court Opinion, 10/22/15, at 1 n.2).

On June 28, 2014, at approximately two in the morning, while on patrol, Officer Steve DeLuca, a fifteen year veteran of the Erie Police Department assigned to the Neighborhood Action Team, a SWAT unit, responded to a 911 report of a bar fight in progress involving a handgun.

The call to 911 came from Pamela Simmelkjaer, who testified at trial. (**See** N.T. Trial, at 29; **see also id.** at 24-41). Ms. Simmelkjaer testified that she received a telephone call that her underage daughter was involved in a fight at Cramer's Tavern. She drove to Cramer's herself to investigate. When she arrived, she saw Appellant, whom she already knew, and his girlfriend, Juliza Tate.

Ms. Simmelkjaer observed Ms. Tate reach behind Appellant's back and remove a handgun. Appellant took the gun and pointed it at the people at the bar, preventing them from leaving. (**See id.** at 28). Ms. Simmelkjaer asked Appellant to let her in, so she could get her daughter. Appellant refused and demanded that everybody get down. Ms. Simmelkjaer went back to her car and called 911.

Before Officer DeLuca arrived at Cramer's Tavern, radio dispatch advised him that the man with the gun was Appellant. The dispatcher identified Appellant by name. (**See** N.T. Trial, at 44). Officer DeLuca already knew who Appellant was and what he looked like. (**See id.**). Radio dispatch further advised that Appellant was leaving Cramer's and heading toward a gray colored sedan with Texas license plates. (**See id.**).

Officer DeLuca was in full uniform, driving a marked patrol vehicle. On approaching the vicinity of Cramer's Tavern, he observed Appellant standing by the open passenger door of a gray sedan with Texas plates. (*See id.* at 45). Officer DeLuca got out of the patrol car, and began to proceed on foot with a flashlight in his left hand and his drawn service weapon in the right. (*See id.*). He saw Appellant make a throwing motion and heard the thud of metal hitting the pavement, which he recognized as a handgun hitting the pavement. (*See id.*). ("I've heard that a hundred times on this job."). (*Id.*).

Officer DeLuca ordered Appellant to put his hands up and get down on the ground, using forthright street language. Appellant did not comply; he charged at Officer DeLuca aggressively. (*See id.* at 46, 67-69). Officer DeLuca used physical force to subdue him. By this time he was assisted by back-up police who had arrived on the scene. They arrested Appellant. Even after Appellant was in custody, he resisted efforts to put him into the patrol car, pushing back to try to get over to another fight which had broken out. (*See id.* at 49).

Another officer, Adam Edmunds, retrieved a handgun from under the sedan. (*See id.* at 68). The gun was a .380 Smith & Wesson. (*See id.* at 50). The serial number was filed off. It had a live round in the chamber. (*See id.* at 68). It was later determined to be operable. (*See id.* at 50). The Commonwealth presented evidence that Appellant did not have a valid license to carry firearms. (*See id.* at 57-58).

- 3 -

When Appellant was removed from the patrol vehicle, police found several baggies of marijuana on the floor of the back seat. (*See id.* at 54).

After a bench trial, the court convicted Appellant of persons not to possess, use, manufacture, control, sell or transfer firearms, 18 Pa.C.S.A. § 6105(a)(1); firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1); possession of firearm with altered manufacturer's number, 18 Pa.C.S.A. § 6110.2(a); possession of a small amount of marijuana, 35 P.S. § 780-113(31);, and possession of drug paraphernalia, 35 P.S. § 780-113(32).

After his conviction, the court sentenced Appellant to an aggregate term of not less than forty-eight nor more than ninety-six months' incarceration. This timely appeal followed.[2]

Appellant presents three overlapping questions for our review:

> [1.] Whether the courts erred by allowing Judge Connelly to overrule Judge Di[S]antis' decision to allow [Appellant] an extension to proceed with his Omnibus Pre-Trial Motion For Relief, due to [Appellant] lacking his Discovery, without Judge Connelly having extenuating circumstances present to do so[?]
>
> [2.] Whether the evidence was insufficient to sustain the conviction under the Uniformed [sic] Firearm [sic] Acts [sic], where the Commonwealth failed to prove beyond a reasonable doubt that Officer Deluca did have the probable cause necessary to seize and arrest [Appellant]. This officer never observed any criminal activity by [Appellant], and failed to further investigate

---

[2] Appellant filed a timely concise statement of errors, on September 25, 2015. The trial court filed its opinion on October 22, 2015. *See* Pa.R.A.P. 1925.

the 911 dispatch, in which was anonymous [sic] to Officer Deluca at time seizure took place[?]

[3.] Whether an illegal seizure and arrest took place by Officer Deluca brandishing his duty weapon and aiming it at [Appellant], before further investigating the 911 dispatch, in which was anonymous [sic] to this officer at time seizure and arrest took place[?]

(Appellant's Brief, at unnumbered page 5).[3]

In his first issue, Appellant objects to Judge Shad Connelly's dismissal of his omnibus pre-trial motion (a motion to suppress), as untimely, after Judge Ernest J. DeSantis, Jr. had previously granted him an extension to file.

> Our standard of review when considering the denial of a pretrial motion to suppress is well settled:
>
> > Our . . . review . . . is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions are in error.
>
> *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 842 (2003). Moreover, we must defer to the credibility determinations of the trial judge who had the opportunity to observe the witnesses' testimony. *Id.* at 843.

*Commonwealth v. Brice*, 856 A.2d 107, 110 (Pa. Super. 2004), *appeal denied*, 864 A.2d 1202 (Pa. 2005).

_____

[3] The Commonwealth did not file a brief.

Here, Appellant is correct that Judge Connelly at first dismissed his omnibus pre-trial motion as untimely. (**See** Order, 1/12/15). However, our independent review of the record reveals that after the initial order was dismissed as untimely, Judge Connelly subsequently denied the motion based on probable cause. (**See** Order, 3/05/15). We conclude that Judge Connelly's initial dismissal for untimeliness is superseded by the March order denying the motion on the merits.

We discern no prejudice to Appellant from the delayed denial on the merits, and Appellant does not claim any. Accordingly, the earlier dismissal was, at most, harmless error. At this point, indeed, before trial, Appellant has already received the review he now claims was denied to him. Appellant's first claim is unsupported by the record, and moot.

In his second question, Appellant challenges the sufficiency of the evidence for his VUFA convictions. (**See** Appellant's Brief, at 5). Appellant's claim lacks merit.

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the [factfinder] to find every element of a crime beyond a reasonable doubt.
>
> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the

combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Tejada*, 107 A.3d 788, 792–93 (Pa. Super. 2015), *appeal denied*, 119 A.3d 351 (Pa. 2015) (citations omitted).

Here, Appellant maintains that "[t]here was simply no reasonable suspicious [sic], nor probable cause present, to sustain the conviction of the Uniformed [sic] Firearm [sic] Acts [sic], and as such, the evidence was insufficient to sustain the conviction under those acts [sic]." (Appellant's Brief, at 15).

Appellant misconceives our scope and standard of review. For a challenge to sufficiency, we review the evidence of record in the light most favorable to the Commonwealth as verdict winner. *See Tejada*, *supra* at 792. We evaluate the entire record and consider all evidence actually received. *See id.* at 793.

Here, viewed in the light most favorable to the Commonwealth as verdict winner, Ms. Simmelkjaer testified that she called 911 after she observed Appellant brandishing a handgun, and he refused to allow her inside the tavern to retrieve her daughter. Officer Deluca knew from radio dispatches prior to his arrival that someone had a handgun during a bar fight in progress at Cramer's Tavern, and he specifically knew from a dispatch

update that the person with the handgun was Appellant. He was previously acquainted with Appellant and could identify him by sight.

On approaching Cramer's Tavern, Officer DeLuca observed Appellant standing by a gray sedan with Texas license plates, as described in the dispatch. He saw Appellant make a throwing motion. He heard the thud of metal hitting the ground, which he recognized from his police experience as consistent with throwing away a firearm. When another officer (Officer Edmunds) retrieved a weapon from under the vehicle, it was found to be loaded, and later confirmed to be operable. Its serial number was obliterated.

Viewing all the evidence received in the light most favorable to the Commonwealth as verdict winner, we have no hesitation in concluding that there was sufficient evidence to allow the trial judge, sitting as factfinder, to find every element of the VUFA violations charged to be proven beyond a reasonable doubt. *See Tejada, supra* at 793. Appellant's second claim fails.

In his third claim, Appellant asserts that Officer DeLuca's actions constituted an illegal seizure and arrest. (*See* Appellant's Brief, at unnumbered page 5). He maintains that the display of a weapon by an officer (Officer DeLuca) was "coercive police conduct." (*Id.* at unnumbered page 14). At its core this claim is little more than a variation on Appellant's second issue, challenging the sufficiency of the evidence. (*See id.* at 15

("Thus the evidence is simply insufficient to sustain the conviction. . . .")).
It fails for the same reasons.

Moreover, we note that Appellant offers no reference from the record in support of his argument that Ms. Simmelkjaer's 911 call was "anonymous," and on independent review we find none.[4] (**See** N.T. Trial, at 59). Accordingly, Appellant's reliance on the line of cases questioning the reliability of information supplied by anonymous tipsters is inapposite.[5]

Appellant's conclusion that "Officer DeLuca was just looking to arrest [him] this night" is unsupported by reference to the record. (Appellant's Brief, at 15). It merely recapitulates his self-serving recitation of unsupported claims, *e.g.*, "[Appellant] never displayed any 'suspicious or irregular' behavior, nor any criminal activity, before Officer Deluca approached him with his duty weapon drawn and flashlight on [him]." (**Id.** at unnumbered page 14) (record citation omitted).

Additionally, even if we were to assume for the sake of argument, contrary to the evidence of record, that Appellant did not display "suspicious

---

[4] Officer DeLuca's testimony merely confirms that **he** was not given Ms. Simmelkjaer's name by dispatch, **not** that her call was anonymous. (**See** N.T. Trial, at 59). Officer DeLuca explained further that there were **three** 911 calls that night reporting the ongoing disturbance at Cramer's Tavern. (**See id.** at 60).

[5] In any event, we would find under the totality of circumstances test, that the specific information supplied by Ms. Simmelkjaer established the necessary reasonable suspicion that criminal activity was afoot. **See Commonwealth v. Hayward**, 756 A.2d 23, 28 (Pa. Super. 2000).

or irregular" behavior directly to Officer DeLuca, that alone does not resolve the issue. We review reasonable suspicion under the totality of circumstances test. *See Hayward*, *supra* at 28. It is well-settled that "even a combination of innocent facts, when taken together, may warrant further investigation[.]" *Commonwealth v. Kemp*, 961 A.2d 1247, 1255 (Pa. Super. 2008) (*en banc*) (citation omitted).

Here, we would conclude under the totality of circumstances test, that the specific information supplied by Ms. Simmelkjaer, (bar fight, Appellant identified by name, brandishing handgun, holding bar patrons captive; movement to gray sedan with Texas plates), established reasonable suspicion that criminal activity was afoot. *See Commonwealth v. Walls*, 53 A.3d 889, 895 (Pa. Super. 2012) (holding police officer had reasonable suspicion that criminality was afoot to justify detention of defendant; officer heard police radio broadcast describing individual with gun, officer observed defendant one-half block away from location mentioned on police radio, defendant matched description of suspect, and defendant fled after seeing officer).

All of Appellant's claims lack merit.[6]

---

[6] We note that we have previously denied Appellant's application to supplement the record, chiefly with a DVD claimed to be in the possession of another panel in a separate appeal. (*See* Application to Supplement the Record, 2/03/16; *see also* Order, 2/17/16). Appellant essentially claims that the DVD would refute Officer DeLuca's testimony that he (Appellant),

*(Footnote Continued Next Page)*

Our reasoning differs from that of the trial court. However, we are not bound by the rationale of the trial court and may affirm on any basis. **See Richmond v. McHale**, 35 A.3d 779, 786 n.2 (Pa. Super. 2012).

Judgment of sentence affirmed.

Judge Panella joins the Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/21/2016</u>

---

*(Footnote Continued)* ————————————

was violent and aggressive, refusing to comply with the officer's commands. The DVD was played for the court at trial. (**See** N.T. Trial, at 53). It was the province of the trial court, sitting as factfinder, to weigh the evidence and accept all, part, or none of it. Leaving aside the timing and appropriateness of the application, as well as the logistics of transfer and redelivery of the DVD, it (the application) is an invitation for this Court to re-weigh evidence already presented to the trial court. We properly declined. **See Tejada**, **supra** at 792 ("In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.").