**COMMONWEALTH of Pennsylvania,
Appellant,**

v.

**Curas CAMPBELL, Appellee.**

Superior Court of Pennsylvania.

Submitted June 12, 2000.

Filed Aug. 24, 2000.

---

Paula C. Cosenza, Asst. Dist. Atty., Meadville, for Com., appellant.

David F. Taylor, Washington, for appellee.

Before: FORD ELLIOTT, LALLY–GREEN, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 In this appeal, we are called upon to determine whether the sentencing court erred by failing to apply the mandatory sentencing provisions of 18 Pa.C.S.A. § 6317 once the defendant was convicted of drug dealing under 35 P.S. 780–113(a)(30) and it was determined that the location of the drug deliveries was on "the real property on which is located a . . . playground." We hold that the sentencing court did err in its interpretation of section 6317 and, therefore, we vacate Campbell's sentence and remand this case to the sentencing court to apply the mandatory sentencing requirements provided by 18 Pa. C.S.A. § 6317.[1]

¶ 2 The convictions of Curas Monique Campbell arose from an encounter between her and a confidential informant (CI) that occurred following a controlled drug purchase. As the CI was leaving the scene of this controlled drug purchase, Campbell approached him and indicated that she was unhappy that the CI purchased crack cocaine from another dealer. During this encounter, Campbell and the CI reached an agreement that the CI would return the next day to purchase crack cocaine from Campbell.

¶ 3 The following day, the CI went to 755 Forest Green Estates, in an area slightly south of the City of Meadville, Crawford County, Pennsylvania, to make a controlled purchase of crack cocaine from Campbell. Forest Green Estates, a privately-owned apartment complex, provided numerous play areas on the complex grounds within close proximity to the apartment units. The CI met with Campbell at her apartment, but was informed that she had only a small quantity of crack cocaine to sell. Campbell and the CI decided to find another drug dealer known as Willis. Using the CI's automobile, Campbell and the CI quickly rode through Meadville without successfully locating Willis and, thereafter, returned to Campbell's apartment at Forest Green Estates. Following their return to Campbell's apartment, the CI again inquired whether Campbell had any crack cocaine for sale. Campbell produced 0.55 of a gram of crack cocaine and, after negotiating a reduction in price, sold the crack cocaine to the CI for $65.00.

¶ 4 Subsequent to the sale, Willis arrived at Campbell's apartment. After a period of negotiation, Willis and the CI settled on a price of $500.00 for 4.7 grams of crack cocaine. Once an agreement was reached, Willis proceeded to Campbell's back bedroom and returned with the crack cocaine. The CI attempted to pay Willis $500.00 for the crack cocaine, but Willis motioned for the CI to pay Campbell. Campbell took the money from the CI and the CI left Campbell's apartment.

¶ 5 On November 10, 1999, a jury convicted Campbell of numerous drug offenses. These offenses were separately docketed as 1999–182 and 1999–183. On

---

1. We grant, herein, the Commonwealth's motion to amend its brief for minor typographical errors.

the former docket, Campbell was convicted of delivery of 0.55 of a gram of crack cocaine and possession with intent to deliver 0.55 of a gram of crack cocaine under 35 P.S. 780–113(a)(30). Under the same statute, 35 P.S. 780–113(a)(30), Campbell was convicted on the latter docket of delivery of 4.7 grams of crack cocaine and possession with intent to deliver 4.7 grams of crack cocaine. Furthermore, Campbell was convicted of the separate offenses that did not fall under 35 P.S. 780–113(a)(30), which included criminal conspiracy to commit delivery of 4.7 grams of crack cocaine, possession of 4.7 grams of crack cocaine, and possession of 0.55 of a gram of crack cocaine.

¶ 6 Forest Green Estates, the location of the drug transactions at issue, is a privately-owned, HUD subsidized, housing apartment complex located just south of the City of Meadville in Crawford County, Pennsylvania. This apartment complex consists of at least eleven buildings that contain multiple residential units. The complex also includes parking lots, walkways, and four separate play areas. These play areas consist of some of the following: swings sets, a basketball court, outdoor picnic tables, sliding boards, and a metal climbing apparatus. The sentencing court concluded that most of these play areas were within 250 feet of the location where the drug deliveries took place and, furthermore, that these play areas were located on the same property where the drug deliveries took place.

¶ 7 On January 5, 2000, the sentencing court conducted a hearing to determine whether the two-year mandatory sentence provision of 18 Pa.C.S.A. § 6317 should be applied to Campbell's convictions. The court determined that the statute should not be applied and, following the hearing, sentenced Campbell, on the first docket, to undergo imprisonment for a minimum term of one (1) year and a maximum term of four (4) years, probation for a period of forty-eight (48) months to run concurrent with the prison sentence, court costs, and a $5,000.00 fine. On the second docket, the court also imposed upon Campbell a separate incarceration sentence for a minimum term of six (6) months and maximum term of twenty-four (24) months to run concurrent with the above prison sentence. Finally, this period of incarceration will be followed by a consecutive probation period of twenty-four (24) months. On January 14, 2000, the Commonwealth of Pennsylvania filed two notices of appeal challenging Campbell's judgments of sentence.

¶ 8 The single issue before this court is: Whether the sentencing court erred when it refused to apply the mandatory sentencing provisions of 18 Pa.C.S.A. § 6317 when it deemed that the location of the drug delivery was on the real property on which is located a playground.

¶ 9 The pertinent part of the statute, 18 Pa.C.S.A. § 6317, states:

Drug–Free School Zones.

(a) General Rule—A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64 [35 P.S. § 780–113(a)(14) or (30) ] ) known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance **occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university *or* within 250 feet of the real property on which is located a recreation center or playground *or* on a school bus,** be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary . . . .

18 Pa.C.S.A. § 6317(a) (emphasis added).

¶ 10 "In construing the enactments of the legislature, appellate courts must refer to the provisions of the Statutory Construction Act." *Key Sav. & Loan Ass'n v.*

*Louis John, Inc.*, 379 Pa.Super. 226, 549 A.2d 988, 990 (1988); 1 Pa.C.S.A. § 1901. In determining the meaning of a statute, we are obliged to consider the intent of the legislature and give effect to that intention. *Commonwealth v. Runion*, 427 Pa.Super. 217, 628 A.2d 904, 906 (1993). Courts may disregard the statutory construction rules only when "the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly." *Eck v. School Dist. of Williamsport*, 197 Pa.Super. 591, 180 A.2d 79, 81 (1962); 1 Pa.C.S.A. § 1901. The General Assembly, in clarifying the proper approach to be used in the determination of legislative intent, stipulated that:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921.

¶ 11 We are to give the words of a statute their plain and ordinary meaning. *Commonwealth v. Neckerauer*, 421 Pa.Super. 255, 617 A.2d 1281 (1992). We are required to construe "words of a statute ... according to their common and accepted usage." *Bankers Trust Co. v. Foust*, 424 Pa.Super. 89, 621 A.2d 1054, 1057 (1993); 1 Pa.C.S.A. § 1903. Words of a statute are to be considered in their grammatical context. 1 Pa.C.S.A. § 1930. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. *Commonwealth v. Reeb*, 406 Pa.Super. 28, 593 A.2d 853, 856 (1991). *See Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 213 A.2d 277, 282 (1965)("it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include"); *Kusza v. Maximonis*, 363 Pa. 479, 70 A.2d 329, 331 (1950)(court "cannot, under its powers of construction, supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted"). The addition may "not conflict with the obvious purpose and intent of the statute." *Commonwealth v. Fisher*, 485 Pa. 8, 13, 400 A.2d 1284, 1287 (1979); 1 Pa.C.S.A. § 1923(c).

¶ 12 Moreover, the Pennsylvania Supreme Court held that when interpreting a statute, "presumably every word, sentence or provision therein is intended for some purpose, and accordingly must be given effect." *Sterling v. City of Phila.*, 378 Pa. 538, 541, 106 A.2d 793, 794 (1954); 1 Pa.C.S.A. § 1921(a). A statute should be interpreted as a whole, *Commonwealth v. Biddle*, 411 Pa.Super. 210, 601 A.2d 313, 317 (1991), giving effect to all its provisions. *Commonwealth v. Lobiondo*, 501 Pa. 599, 603, 462 A.2d 662, 664 (1983).

■ ¶ 13 In coming to its decision, the sentencing court relied upon a standard dictionary definition of the term "playground" as "any area used for outdoor play or recreation, especially by children and often contains recreational equipment such as slides and swings." The term "playground" has also been defined as "a piece of land used for and usu[ally] equipped with facilities for recreation

esp[ecially] by children." **Webster's New Collegiate Dictionary** 874 (8th ed.1981). Playground has also been defined as "[a]n outdoor area set aside for recreation and play; especially, one containing seesaws, swings, and the like." **The American Heritage Dictionary of the English Language** 1005 (7th ed.1978).

¶ 14 In its decision not to apply the mandatory sentence enhancements provided by section 6317, the sentencing court disregarded the plain meaning of the term "playground" by reasoning that the General Assembly never intended the enhancements to apply to playgrounds or play areas that are not associated with school property or public/municipal facilities. Although the court concluded that the term "playground" is broadly defined and that the statute was constructed in a fashion that does not necessarily limit the term's application, it still found it hard to fathom that the General Assembly intended for this term "playground" to apply to *all* outdoor play areas. The court contended that without more explicit language the Pennsylvania General Assembly could not have intended the term "playground" to be all-inclusive. The only rationale the court provided for its inconsistent approach was its belief that if the legislature intended the statute to be so broad, "it would have said so."

¶ 15 Furthermore, the sentencing court suggested that a common theme runs throughout the statute because "public, private or parochial school or a college or university," "recreation center," and "school bus" are all "school related or, in the case of a 'recreation center' public or municipal facilities." Campbell, on the other hand, argues that only school-associated playgrounds were envisioned by the legislature during the construction of this statute, as evidenced by its preamble, title, and legislative history, and only those playgrounds should be subject to the strictures of the statute. We disagree.

¶ 16 There is no question that the play areas described by the sentencing court met the above-mentioned definitions. The court noted that each of the four separate play areas located at Forest Green Estates included some of the following: swing sets, a basketball court, outdoor picnic tables, sliding boards, and a metal climbing apparatus. Although the sentencing court held that the term "playground" simply incorporates school and/or public playgrounds, nowhere in the above-mentioned common definitions is there mention of public domain, municipal facilities or school property in relation to the term. Furthermore, the dictionary definitions do not expressly exclude private or semi-private areas. The standard definitions merely limit the term "playground" to "outdoor" areas.

¶ 17 As with the plain meaning, the grammatical context of the statute lends very little support to the opposing arguments offered by either the sentencing court or Campbell. Instead, we find that the Pennsylvania General Assembly clearly intended for the provisions of section 6317 to be applied in this specific type of circumstance. It constructed this statute, *inter alia,* to apply when drug dealing was perpetrated within 250 feet of a playground. The statutory language does not limit the term "playground." The statute never mentions municipal or public playgrounds; it never mentions playgrounds on school property; and, it never distinguishes public playgrounds from private playgrounds.

¶ 18 Furthermore, the fact that the General Assembly provided a separate distance measurement of 250 feet specific to playgrounds and recreation centers, rather than the 1000 feet distance measurement applicable to school areas, emphasizes the legislature's intent for those areas to be interpreted as separate and distinct from school areas. It would defy logic to construct a statute that covers both drug dealing within 1000 feet of real property on which is located a school, and drug dealing within 250 feet of real property on which is located *school* playgrounds or *school* recreation centers.

¶ 19 Prior to the enactment of section 6317, "Youth/School Enhancement" was the title of the previously controlling enhancement provision, which only applied to areas "within 1000 feet of a public or private elementary or secondary school." 204 Pa.Code § 303.10(b)(1) (2000). It is our interpretation that the General Assembly regarded this statute as insufficient and, therefore, enacted 18 Pa.C.S.A. § 6317 to rectify those insufficiencies. By enacting section 6317 in place of its predecessor, the Pennsylvania General Assembly not only intended to protect our children from the evils of illegal drug dealing on school grounds and on school buses, but additionally intended to protect our children from those same evils on or near their playgrounds and recreation centers, whether associated with municipal facilities, school property or, as in this present case, semi-private apartment complexes.

¶ 20 The General Assembly expressed this intention when it retained the 1000 feet distance measurement for schools, but included the additional language of the statute. Rather than limiting the statute solely to "public or private elementary or secondary school[s]," the General Assembly explicitly included the "real property which is located public, private or parochial schools or a college or university." This suggests that the General Assembly was attempting to expand the degree and reach of the statute to include not only some schools, but to *all* the real property that contained *all* schools. Furthermore, and more significant to this appeal, the statute continued with the word "or" followed by another, distinct distance measurement. This measurement creates a logical separation of the statute and is specific to the terms "playground" and "recreation center." Finally, a third break in the statutory construction statute separates "on a school bus." If the phrase did not include the word "on," it would have been incorporated into the 250 feet distance measurement assigned to the terms "playground" and "recreation center."

¶ 21 With respect to the sentencing court's proposed theme, although there is support for a running theme throughout the statute, the particular theme attributed to it by the sentencing court is neither logical nor cohesive. Instead, we find that areas where one might find a "school," "school bus," "recreation center," and "playground" are the same places where one might frequently find children. Section 6317, is found in chapter 63 (Minors) of title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes. Obviously, from the title of the chapter, the statutes contained within it deal with criminal offenses associated with minor children. Upon closer inspection of these statutes, it is evident that they have been enacted for the protection and well being of children. This determination, in combination with the phraseology of section 6317, leads us to focus on the true relationship of the terms. Clearly, school buses, schools, recreation centers, and playgrounds are not merely related to school property or the public domain, but, rather, share a relation to children.

¶ 22 If we agreed with the logic of Campbell's argument and found that only school-associated playgrounds were envisioned by the legislature during the construction of this statute, the terms "playground" and "recreation center" would be without such purpose or effect. There would have been no reason to include the terms "playground" or "recreation center" if the statute were intended to be applicable simply to school property.

■ ¶ 23 In addition, a penal statute is a statute that "define[s] criminal offenses and specif[ies] corresponding fines and punishment." **Black's Law Dictionary** 1020 (5th ed.1981). Penal statutes must be strictly construed. *Runion, supra* at 905–06. "[S]trict construction does not require that the words of a criminal statute be given their narrowest meaning or that the Legislature's evident intent be disregarded." *Commonwealth v. Gordon*, 511 Pa. 481, 487, 515 A.2d 558, 561 (1986); 1 Pa. C.S.A. § 1903. "Language which is capable of more than one meaning can be clear

and unmistakable in the context of its usage by the selection of the meaning which is neither forced nor strained." *Commonwealth v. Grayson*, 379 Pa.Super. 55, 549 A.2d 593, 595 (1988).

¶ 24 We agree that section 6317 is a penal statute; however, strict construction of the statute, in conjunction with a common usage interpretation of the term "playground," supports our interpretation. It is our finding that the General Assembly's goal and purpose was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country. Through the enactment of section 6317, it attempted to fortify the barrier that segregates the places where our children frequent from the illegal drug scene. A strict reading of the statute exemplifies the General Assembly's intent. The statute protects our children **"within 1000 feet of the real property on which is located a public, private or parochial school or a college or a university."** 18 Pa.C.S.A. § 6317 (emphasis added). Furthermore, it protects our children on their way to and from school on their **"school bus."** *Id.* (emphasis added). Finally, it protects our children in the places where they routinely play. The General Assembly did not choose to limit this protection solely to school play areas or municipal facilities, but chose to reinforce the purpose of the statute by including all areas **"within 250 feet of the real property on which is located a recreation center or playground."** 18 Pa. C.S.A. § 6317 (emphasis added).

¶ 25 Furthermore, statements made by legislators during the enactment process, although not dispositive of legislative intent, may be properly considered as part of the contemporaneous legislative history. *Commonwealth v. Wilson*, 529 Pa. 268, 275 n. 4, 602 A.2d 1290, 1294 n. 4 (1992). State Representative Dent, in support of section 6317, stated the following:

> **My amendment, A2268, simply puts teeth into Pennsylvania's existing Drug–Free–School–Zone–Act.** Essentially, any sale that occurs within the drug-free zone, whether the sale is to a minor or a person over the age of 18, would be prosecuted with the two-year mandatory sentencing provision.

Legislative Journal—House, June 3, 1997, at 1162 (emphasis added).

¶ 26 We find that these remarks of Representative Dent help solidify this court's expansive interpretation of 18 Pa.C.S.A. § 6317, rather than limit its application. Although Representative Dent referred to the act as the "Drug–Free–School–Zone" act, he went on to refer to the area where the enhancement should be applied as "the drug-free zone." This statement by Representative Dent portrayed the act as a broad and encompassing statute intended to be tougher than previous legislation. In our estimation, it does not imply protection limited specifically to school areas, but, rather, guarantees a more inclusive protection.

¶ 27 Finally, "the title is always a part of a statute or ordinance and, as such, may be considered in construing the enactment, but it is in no sense conclusive, particularly when there is no ambiguity in the body of the statute or ordinance itself." *In Re North American Rayon Corp.*, 383 Pa. 428, 432, 119 A.2d 205, 207 (1956). Additionally, "the title, preamble headings, and other divisions of a statute may be considered in the construction but shall not be considered to control." *Boring v. Erie Ins. Group*, 434 Pa.Super. 40, 641 A.2d 1189, 1192 (1994); 1 Pa.C.S.A. § 1924. "[T]he letter of the statute is not to be disregarded" in pursuit of the statute's spirit. *Commonwealth v. Lopez*, 444 Pa.Super. 206, 663 A.2d 746, 748 (1995); 1 Pa.C.S.A. § 1924.

¶ 28 There can be no mistake that the General Assembly titled the statute as "Drug–Free School Zones" and phrased the preamble as "[i]t is an act of the Pennsylvania Consolidated Statutes ... *providing for drug free school zones.*" Although a cursory look at both the title and preamble of section 6317 seem to provide some support for the sentencing court's

decision, to give these phrases the effect ascribed to them by the sentencing court, the statute would be limited to offenses that transpired within the statutorily pre-scribed area surrounding only school prop-erty. This would leave out any recreation center or playground not found within those statutorily prescribed school areas. Ultimately, this interpretation would be inconsistent with the sentencing court's finding that the statute encompasses not only school-related playgrounds, but also those that are municipally operated.

¶ 29 We, instead, find that the General Assembly constructed this statute with the inclusion of the terms "playground" and "recreation center" in order to create a more encompassing statute than the aver-age "Drug–Free School Zones" act. It is a reality that "Drug–Free School Zones," a generic title, has been used by numerous states as the title of statutes that enhance criminal punishment for criminals endeav-oring to deliver illegal drugs in areas sur-rounding schools. *See Lewis v. State*, 348 Md. 648, 705 A.2d 1128 (1998); *see also State v. Merriweather*, Nos. M1998–00323, M1998–00326, M1998–00332, 2000 WL 337585, 2000 Tenn.Crim.App. Lexis 289 (2000). It is also true that many of these statutes apply only to school property and the surrounding areas. The factor that distinguishes Pennsylvania's "Drug–Free School Zones" statute, 18 Pa.C.S.A. § 6317, from similarly titled statutes is the clarity with which the legislatures of other states have constructed their statutes lim-iting them specifically to schools and the surrounding properties.

¶ 30 The Tennessee statute is a great example of this clarity as it unambiguously states that "[i]t is the intent of this section to create Drug–Free School Zones for the purpose of providing all students in this state an environment in which they can learn without the distractions and dangers that are incident to the occurrence of drug activity in or around school facilities." Tenn.Code Ann. § 39–17–432(a) (1999). In contrast, 18 Pa.C.S.A. § 6317 has not been similarly constructed. Although the Gen-eral Assembly has not been as tight or rigid in their language, any attempt to reduce the reach of this statute by relying simply on the title and preamble would be a legal stretch.

¶ 31 After a thorough review of the stat-utory language of section 6317, we hold that the General Assembly intended for the term "playground" to encompass those play areas found on the real property of semi-private housing complexes and apart-ment building complexes and, therefore, we vacate Campbell's sentence and re-mand this case to the sentencing court for re-sentencing in accordance with the provi-sions of 18 Pa.C.S.A. § 6317.

¶ 32 Sentence vacated and case remand-ed to the sentencing court for re-sentenc-ing. Jurisdiction relinquished.