**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Jeffrey Allen TEETER, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 2008.

Filed Nov. 18, 2008.

Anthony J. Zanoni, Bedford, for appellant.

William J. Higgins, Jr., Asst. Dist. Atty., Bedford, for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, ORIE MELVIN, LALLY-GREEN, KLEIN, BENDER, BOWES, GANTMAN, and SHOGAN, JJ.

OPINION BY STEVENS, J.:

¶1 Defendant Jeffrey Teeter appeals from the judgment of sentence entered after a jury convicted him of possession with intent to deliver cocaine ("PWID"), criminal use of a communication facility, possession of a controlled substance, corruption of minors, and possession of drug paraphernalia, charges stemming from his intended sale of drugs at the residential driveway of a 17-year-old buyer. Sentenced to not less than three years or more than six years' incarceration on PWID,[1] Teeter first claims the trial court erred in imposing an additional two year mandatory sentence under 18 Pa.C.S.A. § 6314(b)(4),[2] a sentencing enhancement for selling drugs within 500 feet of a school bus stop. His second claim challenges the denial of his pretrial motion to suppress evidence obtained from a vehicle search he contends was performed without either probable cause or his voluntary consent. We affirm.

¶2 On the evening of June 7, 2004, Teeter made a telephone call to set up a drug sale to S.F., a 17-year-old girl. S.F. asked Teeter to bring the "powder" to her house; he agreed. Unbeknownst to either of them, S.F.'s father was listening in on another telephone extension. Suspecting his daughter's imminent involvement in drug activity, Father called the police and requested their presence. Father explained to the police dispatcher that his daughter had agreed to purchase drugs from the subject on the other end of the telephone and that this person was on his way to his residence. At the conclusion of his telephone conversation, Father stated that an unfamiliar vehicle was pulling into his driveway, and he believed this to be the person coming to sell drugs. Teeter was the driver of that car.

¶3 Teeter and a companion parked in Father's driveway and S.F. walked out to meet them. S.F. and Teeter spoke, but the drug transaction did not occur. At approximately 9:40 p.m., with Teeter still parked in Father's driveway, two state police troopers pulled up and parked their cruisers in the lane leading to the driveway. A few minutes later a police corporal

---

1. 35 P.S. § 780–113(a)(30).

2. Section 6314(b) provides:
   **§ 6314. Sentencing and penalties for trafficking drugs to minors**
   \* \* \*
   (b) **Additional penalties.**—In addition to the mandatory minimum sentence set forth in subsection (a), the person shall be sentenced to an additional minimum sentence of at least two years total confinement, notwithstanding any other provision of this title or other statute to the contrary, if the person did any of the following:

   (1) Committed the offense with the intent to promote the habitual use of the controlled substance.

   (2) Intended to engage the minor in the trafficking, transportation, delivery, manufacturing, sale or conveyance.

   (3) Committed the offense within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university.

   (4) **Committed the offense on a school bus or within 500 feet of a school bus stop.**
   18 Pa.C.S.A. § 6314 (emphasis added).

arrived on the scene and parked his cruiser in the lane. At all times, adequate space remained for Teeter to drive his car past the officers and their cruisers.

¶ 4 With Teeter and his companion standing outside of Teeter's car, one trooper asked Teeter why he was there. He told the trooper that he was there to collect money he was owed for selling stereo equipment. Another trooper asked the same question of Teeter's companion while the corporal talked to Father. All of these events in the driveway occurred within twenty minutes, at which point the officers decided to request consent to search Teeter's vehicle. A Waiver of Rights/Consent to Search form was read in its entirety to Teeter, following which he consented and signed the form. When asked, Teeter indicated that he was the owner of the car and all its contents except for a cell phone.

¶ 5 At that point Teeter lunged into the open driver's side window, where officers witnessed him reach out his hand and brush a clear plastic baggie containing a white powdery substance off of the seat of the vehicle. After claiming that he had nothing to hide, Teeter reached into his front jeans' pockets and turned them inside out; however, one of the troopers noticed he was concealing a marijuana pipe in his hand. The officers took custody of the pipe and the clear plastic baggie and then gave Teeter his *Miranda*[3] warnings. Teeter signed a waiver in the presence of two officers.

¶ 6 Teeter confessed that he had called and set up the deal to sell cocaine to S.F. He explained that since she could not leave her house, he went to her residence to conduct the drug sale. Since Father was keeping a watchful eye from the garage, Teeter and S.F. had decided to forego the drug deal. Teeter also volunteered to the police that there was a second baggie of cocaine along with a plastic cut-off straw in his car. When the officers could not find it, he also assisted them in locating it in a felt box hidden under the driver's side seat cushion.

¶ 7 In the days following Teeter's arrest, it was determined that Teeter intended to sell drugs to S.F. ninety-two feet from a location designated by the local public school district as a school bus stop. The Commonwealth therefore notified Teeter after his conviction that it would seek the mandatory three-year minimum sentence under section 6314(b)(4).

¶ 8 At sentencing, the Commonwealth presented the testimony of, *inter alia,* a school bus driver for the Chestnut Ridge School District.[4] She testified that the school district has charted the school bus stop in question on her designated route for "probably ten years," that the stop was so designated on June 7, 2004, and remained so designated without interruption on the day of her testimony. N.T. Sentencing Hearing, 7/11/05 at 15, 17–18. Moreover, when defense counsel asked her if it was true that school bus stops may change from time to time because of "traffic and whatever," the driver replied "Yes, I would imagine, [b]ut that stop don't change." N.T. at 17–18.

¶ 9 The sentencing court viewed the evidence in light of the language of Section 6314(b)(4) and rejected Teeter's argument

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Also testifying were S.F.'s father and Pennsylvania State Police Trooper Corporal Bradley Hershey, who testified he measured the distance between the bus stop and the residence after being told the location where the minor and defendant were standing. He also verified the location of the school bus stop with the school bus driver. N.T. Sentencing Hearing, 7/11/2005, at 21–22.

that the bus stop was not a bus stop on the summer night in question because school was out of session. Specifically, the court opined at one point "the legislation just says a school bus stop. It doesn't say anything about this and I'm satisfied it is a school bus stop...." N.T. at 9.

¶ 10 On appeal, Teeter first argues he cannot be subject to the mandatory minimum penalty under Section 6314(b)(4)[5] for a drug offense committed against a minor within 500 feet of a school bus stop because his conduct occurred at a time when school was out of session and children were not present. Specifically, he argues the phrase "school bus stop" as used in Section 6314(b)(4) is impermissibly vague and that the statute is thus vague and overbroad.

¶ 11 A defendant does have a substantive due process right to be free from vague and overbroad sentencing statutes. *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563 (2002); *Commonwealth v. Bell*, 537 Pa. 558, 645 A.2d 211 (1994); *Commonwealth v. Burnsworth*, 543 Pa. 18, 669 A.2d 883 (1995). This due process right is connected to the right to be free from arbitrary or discriminatory sentencing. *Bell* at 567 n. 9, 645 A.2d at 216 n. 9. When faced with such a challenge, courts must define the allegedly-vague word or phrase to determine its meaning, in keeping with the apparent intent of the General Assembly (as discussed *infra*) *Burnsworth*. However, since the sentencing enhancement does not apply until sentencing, notice of its application is not required until after the defendant is tried and convicted of the underlying crime. *See Com-*

*monwealth v. Grundy*, 385 Pa.Super. 384, 561 A.2d 39, 40 (1989) (citing *Commonwealth v. Bell*, 512 Pa. 334, 516 A.2d 1172 (1986)).

¶ 12 The legislature has the authority to enact sentencing schemes that reflect various penal philosophies, including other recognized goals of sentencing beyond individual deterrence and rehabilitation, such as retribution and vindication. *Commonwealth v. Vasquez*, 562 Pa. 120, 127–128, 753 A.2d 807, 811 (2000) (Cappy, Justice, concurring). The legislative policy behind Chapter 63 and its enhancement penalties is to punish more severely those who seek to involve children with drugs. *Commonwealth v. Hinds*, 775 A.2d 859, 863 (Pa.Super.2001) *(en banc)*, **appeal denied,** 567 Pa. 757, 790 A.2d 1014 (2001) (interpreting Section 6317 of the Crimes Code, "Drug–Free School Zones," as intended to protect young children from illegal activity attendant with the drug trade, whether or not children were present or had access to the drugs).

¶ 13 As discussed *infra,* we conclude the phrase "school bus stop" is unambiguous under the facts presented at sentencing in the case *sub judice.* A plain reading of Section 6314(b)(4) yields no ambiguity within the statute and reveals a legislative intent to regulate sentences for drug offenses committed near places used as school bus stops. Specifically, the Commonwealth established at sentencing that the crime of PWID for which Teeter was convicted occurred within 500 feet of a long-standing designated school bus stop. The Commonwealth thus met its burden under the sentencing statute, which bound

---

5. We note that challenges to a trial court's application of a mandatory sentencing provision implicate the legality of sentence. *Commonwealth v. Bongiorno*, 905 A.2d 998 (Pa.Super.2006) *(en banc)*, citing *Commonwealth v. Lewis*, 885 A.2d 51, 55 (Pa.Su-

per.2005). Issues relating to the legality of a sentence are questions of law, as are claims concerning the court's application of a statute. *Id.* As such, our scope of review is plenary. *Lewis, supra.*

the trial court to add, as it did, two years to Teeter's minimum sentence.

¶ 14 Teeter argues that the phrase "school bus stop" is impermissibly vague under the facts. Without a permanent landmark signifying its use, Teeter claims, the location in question is a school bus stop only when children are gathered there either before boarding or after exiting a school bus. As school was out of session for summer break when he committed the underlying offense, Teeter concludes there was no school bus stop nearby to bring him under the statute.[6]

¶ 15 "A lawfully enacted statute commands a presumption of constitutionality and should be upheld unless it clearly, palpably, and plainly violates the constitution." *Bell,* 537 Pa. at 569, 645 A.2d at 217. One has a constitutional right to be free from vague and overbroad sentencing statutes. *Johnson, supra.* The due process right is connected to the right to be free from arbitrary or discriminatory sentencing. *Bell* at 567 n. 9, 645 A.2d at 216 n. 9. Where a facial attack on the alleged vagueness of a statute does not implicate First Amendment freedoms, we measure the specificity of a statute against the actual conduct in which the appellant engaged. *Commonwealth v. Wallace,* 368 Pa.Super. 255, 533 A.2d 1051, 1052 (1987).

¶ 16 In construing the enactments of the legislature, appellate courts must refer to the provisions of the Statutory Construction Act. *Commonwealth v. Campbell,* 758 A.2d 1231 (Pa.Super.2000). In so doing, we are obliged to consider the intent of the legislature and give effect to

that intention. *Id.* The General Assembly has clarified the approach we are to use to determine legislative intent as follows:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

\* \* \*

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921.

¶ 17 We are to give words in a statute their plain and ordinary meaning, and construe them according to their common and accepted usage. *Campbell, supra;* 1 Pa.C.S.A. § 1903. We may not add

---

**6.** Appellant offers an alternate overbreadth challenge that if "school bus stop" as provided in Section 6314(b) applies even when children are absent from such locations, then the statute impermissibly implicates conduct irrelevant to the intent of the General Assembly to keep drugs from children's midst. As ex-

plained *infra,* however, Section 6314(b)(4) and its provision of a 500 foot zone is rationally related to the clear legislative intent to fortify the barrier segregating the drug trade from places where our children routinely gather.

provisions or impose restrictions that the General Assembly has omitted unless necessary to the construction of the statute. *Id.* In determining the need for an addition, we remain mindful that such addition may "not conflict with the obvious purpose and intent of the statute." *Id.* at 1234 (quoting *Commonwealth v. Fisher*, 485 Pa. 8, 13, 400 A.2d 1284, 1287) (1979); 1 Pa. C.S.A. § 1923(c). As such, statutory words are to be read in the context of the whole statute, whose every word, sentence, and provision have some purpose which this Court must give effect. *Campbell* at 1234.

¶ 18 Moreover:

[A] penal statute is a statute that defines criminal offenses and specifies corresponding fines and punishment. Penal statutes must be strictly construed. Strict construction does not require that the words of a criminal statute be given their narrowest meaning or that the Legislature's evident intent be disregarded. Language which is capable of more than one meaning can be clear and unmistakable in the context of its usage by the selection of the meaning which is neither forced nor strained.

*Id.* at 1236–37.

¶ 19 We must, therefore, determine the meaning of "school bus stop" in keeping with the apparent intent of the General Assembly. "18 Pa.C.S.A. § 6314. **Sentencing and penalties for trafficking drugs to minors**" provides that a person 18 years or older convicted of delivering or possessing with the intent to deliver drugs to a minor be sentenced to a minimum sentence of at least one year incarceration. 18 Pa.C.S.A. § 6314(a). The statute further mandates that an additional minimum sentence of at least two years be imposed if, *inter alia,* the offense occurred within 1,000 feet of a school, per Section 6314(b)(3), or, pertinent here, "within 500

feet of a school bus stop," per Section 6314(b)(4). Section 6314(c), moreover, addresses due process rights by explaining that the provisions of the sentencing statute are not elements of the underlying drug offenses themselves, and that a defendant need not receive notice of their applicability until after he is convicted of a qualifying offense. *See Vasquez, supra* (Cappy, J. concurring) (reiterating goals of sentencing unrelated to deterrence).

¶ 20 Teeter asserts that an officially designated school bus stop is not a "school bus stop" as provided in Section 6314(b)(4) unless children are actually there waiting for a bus. This restrictive interpretation is at odds with a plain reading of the statute, the obvious purpose of the protective statutory scheme of which Section 6314 is a part, and with our jurisprudence interpreting companion sections within that scheme.

¶ 21 Applying a plain meaning analysis to Section 6314(b)(4), the phrase "school bus stop" is an unambiguous, commonly understood phrase meaning a place where children are to board and exit a school bus. Notably, the statute contains no modifying language placing time limitations on the phrase. As recited *supra* in the standard of review governing statutory interpretation, we may not read unexpressed restrictions and limitations into a statute unless it is necessary to give it its proper construction in light of clear legislative intent.

¶ 22 Thus, the phrase "school bus stop" is clear and is consistent with the apparent intent of the General Assembly to punish more severely those who seek to involve children with drugs. The legislature has made the policy decision to keep safe and drug-free, to the greatest extent possible, neighborhoods immediately surrounding our schools, playgrounds, and school bus stops on a year-round basis, even at times

when schools are not in session. The legislative purpose in continuously protecting our school-age children from drug dealers, addicts, gangs, and their nefarious activities is no less constitutionally permissible when applied to school bus stops than it is for schools and playgrounds.

¶ 23 The intended purpose of the statutory scheme, therefore, is the *continuous* protection of *places* where we direct our children to gather regularly at certain times of the year. For the courts to relax or suspend altogether our application of sentencing enhancements during times at which such places are not in use makes it more likely for the drug trade and its attendant vices to gain a foothold near those places in which the legislature created safe havens. For this Court to encourage the decline of neighborhoods enveloping school bus stops so as to compromise the safety of children gathering there during the school year would certainly frustrate the clear and compelling legislative intent underlying the entire statutory scheme.

¶ 24 Our decision here is consistent with the manner in which we applied a strict interpretation of Section 6317, Drug free school zones. In a series of decisions, we held that mandatory minimum sentence provisions applied when defendants were convicted for selling drugs near schools and playgrounds even when: (1) no children were involved in the transaction; (2) the playground was on private property; (3) the transaction took place in a residence not accessible to the public; and/or (4) when school was not in session. *See Commonwealth v. Williams,* 955 A.2d 386, 2008 Pa. Super Lexis 2042 (Pa.Super.2008); *Commonwealth v. Hinds,* 775 A.2d 859 (Pa.Super.2001) (en banc); *Commonwealth v. Drummond,* 775 A.2d 849 (Pa.Super.2001) (en banc); and *Campbell, supra.* Acknowledged in these decisions was the legitimate and paramount legislative intent to "fortify the barrier that segregates the places where our children frequent from the illegal drug scene." *Campbell* at 1236–1237; *Hinds* at 862 (quoting *Campbell, supra); Drummond* at 856 (quoting *Campbell, supra).* It follows that to keep such places free from the ravages of drugs, the legislature intended extensive and continuous application of the sentencing enhancement statute.[7] For the same reasons, therefore, we would hold that within the plain meaning of a "school bus stop" is the fact that it exists regardless of whether school is in session.

¶ 25 Here it is undisputed that Teeter chose to deliver cocaine to a school-age minor 92 feet from a location officially designated a school bus stop for the past ten years. Moreover, there is nothing in the record to indicate that the stop had lost its status as a school bus stop. As such, there is no merit to Teeter's claim that Section 6314(b)(4) is impermissibly vague under the facts presented at sentencing so as to prevent application of the sentencing enhancement therein.

¶ 26 Next, Teeter contends that from the time the police arrived at Father's residence he was the subject of an illegal arrest and, as such, all evidence discovered by the police should have been suppressed before trial. It was unreasonable, he contends, to believe he was free to leave when officers were on each side of

---

7. In *Drummond,* for example, the defendant argued the word "zone" in Section 6317 bore a rational relationship to the legitimate legislative intent of protecting children from the drug trade only so long as its definition was restricted to mean public places accessible by children. In rejecting this argument, we reiterated the legislature's legitimate and broad goal of protecting children not only from direct drug solicitations but also from all nefarious consequences of the drug trade. *Drummond* at 855.

his car with their cruisers parked behind him. This argument fails.

¶ 27 An encounter between police and a suspect may be characterized as a mere encounter, an investigative detention, a custodial detention, or a formal arrest. *Commonwealth v. Douglass*, 372 Pa.Super. 227, 539 A.2d 412, 417 (1988). Since a mere encounter carries no official compulsion to stop or respond, it need not be supported by any level of suspicion. Meanwhile, an investigative detention must be supported by reasonable suspicion since it subjects the suspect to a stop and a period of detention. However, unlike a custodial detention or a formal arrest, an investigative detention does not require probable cause because it lacks the same magnitude of coercive conditions. *Id.* at 418. The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial, but the following factors are specifically considered: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions. *Id.* at 421.

¶ 28 In the present case, the officers responded to a call that someone unknown to Father was coming to his residence to sell drugs to his minor daughter. Shortly thereafter, when an unfamiliar car pulled into Father's driveway and parked, police officers suspected the driver of that vehicle was the unknown person. These facts created at least reasonable suspicion that Teeter was the one intending to engage in criminal activity at Father's residence. Once the police arrived on the scene, they talked to Teeter for 20 minutes. Teeter was never prevented from leaving the residence, nor was he told by the officers that he was not free to leave. The officers did not use any restraints or any threat of force on Teeter, but, rather, the officers simply asked Teeter questions and requested information. We agree with the trial court that up to the point that the police administered *Miranda* warnings to Teeter, the police encounter with Teeter amounted to no more than an investigative detention. He was never detained or arrested and, thus, the trial judge was correct to deny Teeter's motion to suppress. Accordingly, we reject Teeter's challenge to the order denying his motion to suppress.

¶ 29 Judgment of sentence is affirmed.

¶ 30 Judge KLEIN files a Concurring and Dissenting Opinion in which Judge BENDER and Judge BOWES join.

CONCURRING AND DISSENTING OPINION BY KLEIN, J.:

¶ 1 I agree with the majority that the trial court properly determined that Teeter was not subjected to an illegal arrest, and, therefore, properly denied his motion to suppress. However, under the circumstances of this case, I do not believe that it is permissible to impose the tripling of the minimum of Teeter's sentence by applying the "school bus stop" enhancement. Therefore, I join in part and dissent in part.

¶ 2 Defendant Jeffrey Teeter received a mandatory sentence for the attempted sale of drugs; his sentence was increased three times more than it would have been otherwise because the court found that his conduct fell within the provisions of 18 Pa. C.S.A. § 6314(b)(4), which triples the penalty if a defendant "committed the offense on a school bus or within 500 feet of a school bus stop."

¶ 3 It certainly makes sense to provide an additional penalty if a defendant sells drugs on a school bus or in the vicinity of a

school bus stop where children might be gathered as they get on or off of a bus. At the same time, it accomplishes no valid end and makes no legal or common sense if a sentence is tripled under these circumstances where:

· no one could realize this was a bus stop because there was no sign indicating such;

· it was 9:30 at night; and

· school had ended for the year.

All of these circumstances demonstrate that section 6314(b)(4) is ambiguous as applied to Teeter. Therefore, I believe that to triple the sentence under these circumstances not only distorts legislature's intent, but also poses serious Federal due process problems.

¶ 4 The majority accurately states the law, which raises the issue of substantive due process, but then does not follow this law. I fully agree with the following statement found on page 6 of the majority opinion:

A defendant does have a substantive due process right to be free from vague and overbroad sentencing statutes. *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563 (2002); *Commonwealth v. Bell*, 537 Pa. 558, 645 A.2d 211 (1994); *Commonwealth v. Burnsworth*, 543 Pa. 18, 669 A.2d 883 (1995). This due process right is connected to the right to be free from arbitrary or discriminatory sentencing. *Bell* at 567 n. 9, 645 A.2d at 216 n. 9. When faced with such a challenge, courts must define the allegedly-vague word or phrase to determine its meaning, in keeping with the apparent intent of the General Assembly (as discussed *infra* ) *Burnsworth.*

¶ 5 However, I strongly *disagree* with the majority when it states in the same opinion:

As discussed *infra*, we conclude the phrase "school bus stop" is unambiguous under the facts presented at sentencing in the case *sub judice*. A plain meaning reading of Section 6314(b)(4) yields no ambiguity within the statute and reveals a legislative intent to regulate sentences for drug offenses committed near places used as school bus stops.

¶ 6 There is an adage used when instructing young lawyers that when a lawyer says something is "clear," it is usually *unclear* or clear the other way. That adage applies when saying that the location at the end of a driveway where this drug sale was intended to take place is near what must *unambiguously* be considered a "school bus stop."

¶ 7 The context of the phrase "school bus stop" in section 6314(b)(4) is instructive. The statute defines the prohibited location as "on a school bus or within 500 feet of a school bus stop." The intent appears to be to impose the tripled penalty if young children are around the place of the sale, not if they might have been there hours or days before. One would think that a sale near the bus stop is akin to sale on the bus, so that if the sale takes place just after the children disembark from the bus or while they are waiting to get on the bus the enhancement applies. This makes sense. But in those circumstances, a defendant would necessarily be aware that there is a school bus stop and could not complain if the sentence is enhanced. However, under the circumstances here, there is no way the defendant could know that the school bus *ever* stopped at the end of the driveway. That is beyond the fact that at the time of the sale, which occurred during the summer months at 9:30 in the evening, it would have been extremely unlikely that any children were close by.

¶ 8 Criminal statutes are to be construed strictly against the Commonwealth.[1] In this particular case, the drug sale was made at the end of a residential driveway, 92 feet from the street. There was no sign marking the end of this driveway as a school bus stop. The time was 9:40 p.m. School had closed for the summer recess earlier that week. There was no indication at all *at the time of this intended sale* that school buses stopped at the bottom of the driveway. Sometimes a school bus stop location is clear, for example, if the stop is marked, if there are children gathered and waiting, and if it is during the day while school is in session and the stop is marked. However, considering all of the circumstances in this case, it is unfair to apply the enhancement where whether this is or is not a school bus stop is unclear, particularly since there is no notice to anyone that this *is* a school bus stop. Therefore, under the rule of lenity, I do not believe it can be said with *any* clarity that this *is* a school bus stop.

¶ 9 I also disagree with the Commonwealth that the cases dealing with the "school zone" sentencing enhancement control this situation. The cases interpreting 18 Pa.C.S.A. § 6317,[2] a different statute, but one also aimed at limiting drug exposure to minors, may be summarized as follows:

· In *Commonwealth v. Campbell*, 758 A.2d 1231 (Pa.Super.2000), this Court held that the term "playground" encompassed "play areas" in "semiprivate housing complexes and apartment building complexes." In reaching this conclusion, we rejected the argument of the defendant, as well as the trial court, that the term "playground" only referred to a "school-related" playground. *Id.* at 1235.[3]

· In *Commonwealth v. Drummond*, 775 A.2d 849 (Pa.Super.2001) *(en banc)*, appeal denied, 567 Pa. 756, 790 A.2d 1013 (Pa.2001), this Court rejected the argument that the legislature, in establishing a 1000–foot "drug free zone" around schools, had intended to include only public areas accessible by school-aged children. Therefore, we held that the "drug free school zone" included a private apartment within 1,000 feet of a school. *Id.* at 857.

---

1. *See* 1 Pa.C.S.A. § 1928(b)(1) (oftentimes called the "Rule of Lenity.").

2. Section 6317 states in relevant part:

   (a) **General rule.**—A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any oth-er provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary....

   \* \* \*

   If the sentencing court finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors).

   18 Pa.C.S. § 6317(a) (footnote omitted).

3. *See also Commonwealth v. Bongiorno*, 905 A.2d 998 (Pa.Super.2006) (holding that area in residential apartment complex containing a merry-go-round and safety chips was a playground); *Commonwealth v. Brice*, 856 A.2d 107 (Pa.Super.2004) (holding that poorly-equipped basketball court where children "routinely play" constituted a playground).

¶ 10 The above-referenced cases essentially hold that when construing the plain meaning of terms such as "playground," "school," or "within," a defendant is not entitled to the narrowest meaning of those terms. Moreover, we have consistently refused to interpret section 6317 in a manner that would be inconsistent with the manifest intentions of the legislature and its overarching policy goals of protecting children from the dangers attendant to the drug trade.[4] However, a close reading of the case law interpreting section 6317 reveals that this Court was never squarely confronted with the question of whether an *ambiguous* term or phrase should be applied narrowly or expansively. There is a difference between identifying a building as a school or equipment as that of a playground and identifying an unmarked location as a "school bus stop."[5]

¶ 11 In the present case, the phrase "school bus stop" is susceptible to several reasonable interpretations. The evidence at trial clearly showed that there was no marking showing that this was a school bus stop at this location. Further, the testimony of a witness for the Commonwealth, a school bus driver for the Chestnut Ridge School District, opined that, because school had recessed for the summer, *no* school bus stop existed within 500 feet of the place of appellant's intended delivery of the controlled substances to a mi-

---

4. Underlying our interpretation of the mandatory minimum provisions of Section 6317 is the oft cited rationale set forth by this Court in *Commonwealth v. Campbell*, 758 A.2d 1231 (Pa.Super.2000):

   We agree that section 6317 is a penal statute; however, strict construction of the statute, in conjunction with a common usage interpretation of the term "playground," supports our interpretation. It is our finding that the General Assembly's goal and purpose was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country. Through the enactment of section 6317, it attempted to fortify the barrier that segregates the places where our children frequent from the illegal drug scene. A strict reading of the statute exemplifies the General Assembly's intent. The statute protects our children *"within 1000 feet of the real property on which is located a public, private or parochial school or a college or a university."* 18 Pa.C.S. § 6317 (emphasis added). Furthermore, it protects our children on their way to and from school on their *"school bus."* *Id.* (emphasis added). Finally, it protects our children in the places where they routinely play. The General Assembly did not choose to limit this protection solely to school play areas or municipal facilities, but chose to reinforce the purpose of the statute by including all areas *"within 250 feet of the real property on which is located a recre-*

*ation center or playground."* 18 Pa.C.S. § 6317. (Emphasis added).
*Id.* (Emphasis in original).

5. While I recognize the expansive interpretation of section 6317 in the aforementioned cases, I would also point out that application of an enhancement under section 6314 differs significantly from one under section 6317. To begin with, section 6314 requires the presence, or at least the intended presence, of a minor for the provision to apply at all. By contrast, section 6317 is designed to protect children from all the attendant harms of the drug trade, *Drummond, supra* at 857, whether or not a minor is present. Section 6314 is concerned with the actual accessibility of drugs to minors; section 6317 specifically does not apply to actual or intended drugs sales to minors. *See* 18 Pa.C.S.A. § 6317(a). The *Drummond* Court recognized this important distinction between sections 6314 and 6317, stating:

   We note further the enactment of 18 Pa. C.S.A. § 6314 (Sentencing and penalties for trafficking drugs to minors). This section applies when the sale is actually to a minor. The existence of this section, along with the reference to its applicability in § 6317, further supports our findings that accessibility to the drugs by minors is not a factor detrimental to the application of the provisions of section 6317. *Rather a separate provision exists to address that offense.*
   *Id.* at 857 n. 7 (emphasis added).

nor. Consequently, the record here presents ambiguity in the meaning of the phrase "school bus stop," since as applied, its existence could depend upon variables such as (1) a point in time, (2) a point upon real property, or (3) a combination of the two. Put differently, the existence of a "school bus stop" may depend wholly upon the time of day or year, depending on whether school is in session, or upon a point of real property where a school bus might stop on a given day, irrespective of the aspects inherent in the term "school."[6] Moreover, the location of school bus stops frequently changes, both from year to year and sometimes during the course of a school year. Thus, I believe that the phrase "school bus stop" is ambiguous. *Cf. Commonwealth v. Thomas,* 743 A.2d 460, 465 (Pa.Super.1999), ("We will consider the language of the statute ambiguous only where it will bear two or more meanings"), *appeal dismissed,* 563 Pa. 187, 758 A.2d 1177 (2000).

¶ 12 Since the phrase "school bus stop" is ambiguous *in the context of the record before this Court,* I believe that the ambiguity raised must be resolved in favor of Teeter. The so-called "rule of lenity" is a rule that ensures "fairness to persons subject to the law by requiring penal statutes to give clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be." *See Commonwealth v. Reaser,* 851 A.2d 144, 149 (Pa.Super.2004) (internal quotations and citations omitted). Pursuant to the principle of fair notice, the rule of lenity further provides that "ambiguity concerning the ambit of a penal statute must be resolved in favor of lenity." *Id.* (Internal quotations and citations omitted). *See also Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185, 195–96 (2005). Here, the ambiguity presented in the text of section 6314(b)(4) precludes a finding that Teeter received fair notice that his conduct would expose him to a tripling of his additional minimum criminal sanction merely because the delivery of a controlled substance was to occur within 500 feet of the unmarked real property on which a school bus occasionally stopped at a time different that in which the drugs were intended to be sold.

¶ 13 I believe the phrase "school bus stop," as applied in this instance, is ambiguous, and, based upon the principles and canons prohibiting the imposition of criminal punishment upon defendants due to unreasonably vague penal statutes, the application of the mandatory minimum prescribed by section 6314(b)(4) cannot stand.

¶ 14 In summary, while I agree with the majority that the motion to suppress was properly denied, I disagree that the tripling of the minimum sentence because of the school bus stop enhancement applies *in this case* and accordingly dissent from that part of the Opinion.

---

**6.** It bears remarking further that the legislature, in enacting sections 6314(b)(3) and 6317(a), clarified and plainly intended to disregard the temporal aspects of the term "school," as it connotes structures and buildings, by proscribing the actual or intended delivery of controlled substances "within 1,000 feet of the *real property* " on which a "school" is located. 18 Pa.C.S.A. §§ 5314(b)(3), 6317(a) (emphasis supplied). Textual evidence of a similarly intended expansive interpretation of the term "school" is noticeably absent from the bare reference to a "school bus stop" in section 6314(b)(4). *See* Pa.C.S.A. § 6314(b)(4).